TEXAS & NEW ORLEANS RAILROAD
COMPANY, Appellant,

v.

DAIRYLAND TRANSPORT CORPORA-
TION, Appellee.

No. 17402.

United States Court of Appeals
Fifth Circuit.

April 16, 1959.

Rehearing Denied June 5, 1959.

Finis Cowan, Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellant.

Gaius G. Gannon, Jr., Lamberth S. Carsey, Houston, Tex., Turner White, III, Springfield, Mo., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment holding appellant liable for property damages arising out of a collision between appellant's eastbound freight train and appellee's southbound tractor and trailer unit. The accident occurred at 4:15 A.M. on November 17, 1955, when it was dark, clear, and cold.

The appellant does not contend that the evidence failed to make a jury issue as to its negligence, specifically either because of the speed of the train (considering the surrounding location and circumstances) or of a failure to give adequate warning of the train's approach by ringing the bell and blowing the whistle. It strongly insists, however, that the truck driver was guilty of contributory negligence as a matter of law.

The appellee's truck was proceeding south in the middle of the southbound side of a six-lane highway through Giddings, Texas. The highway was crossed by three railroad tracks, the northernmost track being used for storage purposes and the next being the main line. The main line was protected by a standard "cross-buck" railroad crossing sign located between it and the storage track. Three freight cars were standing on the storage track at the west side of the highway. One of the cars was extending out into the highway about five feet.

These cars obstructed the truck driver's view of the approaching train until he was "just about astraddle of that first track." Street lights prevented the driver from seeing the reflected rays of the train's headlight. The truck driver estimated the distance between the two tracks at "between 40 and 50 feet, I imagine." By actual measurements, however, both of a surveyor and of the investigating police officer, the distance from the center of the storage track to the center of the main line track is shown to be 59 feet. The rails of each track are 4.7 feet apart. Thus, the distance separating the south rail of the storage track from the north rail of the main line is 55.3 feet. The jury could reasonably find that the front end of the tractor was 6 feet south of the south rail of the storage track or 49.3 feet from the nearest rail of the main line at the instant when the truck driver first saw the approaching train.

The truck and the train were each then traveling at between 15 and 20 miles per hour. The truck driver testified that when he saw the approaching train he did not think that he could stop in time to avert the collision and, instead of trying to stop, he cut his wheels to the left and attempted to get the tractor portion of his vehicle across the main line. As soon as it became evident to the train crew that the truck would not stop, the emergency brakes were applied. The train struck the trailer, turning it over and damaging the truck and its contents, a load of milk.

The first specification of error is:

"The District Court erred in failing to grant defendant's motions for instructed verdict and judgment notwithstanding the verdict because the evidence showed conclusively that plaintiff's truck driver had violated Art. 6701d and thus was contributorily negligent, as a matter of law."

The pertinent provisions of Art. 6701d of Vernon's Annotated Texas Civil Statutes provide that:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\* \* \* \* \* \*

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

As has been seen, the approaching train was plainly visible to the driver of the truck when he was 49.3 feet from the nearest rail of the track on which the train was moving. The train was then in hazardous proximity to the crossing. Yet the driver did not stop the truck in the statutory area. It necessarily follows, so the appellant insists, that the driver violated the statute and was contributorily negligent as a matter of law.

The statute has been construed by the Courts of Civil Appeals of Texas in many cases, some of which are collected by the Supreme Court of Texas in its first definitive construction of the statute. Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex.Civ.App.1956, 291 S.W.2d 931, 934. The Texas Supreme Court again construed the statute in Texas & New Orleans R. Co. v. Day, Tex.1958, 316 S.W.2d 402.

In the McFerrin case, supra, the Texas Supreme Court construed the statute in presently pertinent part as follows:

"As we analyze the statute it imposes two duties on a motorist approaching a grade crossing: (1) a duty to stop the vehicle within fifty but not less than fifteen feet from the nearest rail, and (2) a duty on one having thus stopped not to proceed until he can do so safely. * *

" * * * Neither duty comes into existence unless and until these three conditions exist: (1) A train must be 'approaching' the crossing; (2) the approaching train must be 'plainly visible', and (3) the train must be 'in hazardous proximity' to the crossing. * * *

* * * * * *

"If there is a duty on the motorist to act it arises as he approaches and comes within the statutory stopping area. It is at that time that he must determine whether he is under a statutory duty to stop. As heretofore pointed out, the existence of the duty is not absolute but is conditioned on the existence at that time of a certain state of facts. It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless under all the attendant facts and circumstances it can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train, was hazardous.

* * * * * *

"Considered by and large, we see no sound reason to be dissuaded from applying the common-law test of the reasonably prudent man in determining whether, under the statute, a train was 'plainly visible' and 'in hazardous proximity' to a crossing. * * * " (291 S.W.2d at pages 935, 936, 939.)

The Court then applied those rules of construction to the facts in the McFerrin case. The defense interposed by the pleadings in that case was that the deceased failed to stop, not that having stopped he thereafter undertook to proceed when he could not do so safely. The Court continued:

" * * * With the issues thus narrowed by the pleadings, petitioner's motion for an instructed verdict was good only if the evidence conclusively established the three conditions giving rise to the duty to stop

and conclusively established a failure to stop.

"It is undisputed that the train was 'approaching', and the first condition is therefore conclusively established. The next question, then, is this: does the evidence show conclusively that the approaching train was 'plainly visible' and 'in hazardous proximity' to the crossing within the meaning of the statute so as to impose on the deceased a duty to stop?

"The evidence is that the deceased was driving his automobile north on a graveled road which paralleled the railroad track, on the west, for some 600 feet before making a curve to the right and crossing the track at right angles. The train was traveling in the same direction. The fireman testified that he saw the automobile when it entered the graveled road and continued to see it at intervals until the collision; that the train was traveling at a speed of from 55 to 60 miles per hour and the automobile was traveling at a speed estimated at 18 miles per hour; that the automobile 'slowed down' to make the curve toward the crossing, but then 'drove steadily right on' until it was on the track. The fireman declined to estimate the distance of the train from the crossing at the time the automobile entered the road paralleling the track, but inasmuch as his speed estimates were that the train was traveling approximately three and one-third times as fast as the automobile and the automobile at that point was approximately 675 feet from the crossing, the train must have been approximately 2,250 feet from the crossing. Thus it appears from petitioner's own testimony that the train was considerably to the rear of the automobile at all times while traveling in the same direction toward the crossing. It is to be remembered that the deceased was on the left side of the front seat of his car and the train was approaching from the rear and on the right side of the automobile. The only way the deceased could have seen the train at all, while traveling north, was by turning to look to his rear and it is not at all clear in this record that the train could have been seen even then. We cannot hold, as a matter of law, that a train is 'plainly visible', within the meaning of the statute, if an approaching motorist has no warning of the approach of the train and must look to his rear in order to discover its presence.

"There is in the record expert testimony from a surveyor which clearly tends to establish that after the deceased made his turn toward the track and at all times after he came within fifty feet thereof he could have seen the train if he had looked to his right. Ordinary care for his own safety required that he look to his right before passing through the stopping zone. We therefore hold, as a matter of law, that the train was 'plainly visible' when the deceased entered, or at least while he was within the statutory stopping area. There is no evidence that it was 'plainly visible' at any greater distance than fifty feet from the track. There is no direct evidence of the distance of the train from the crossing at the time the deceased came within fifty feet thereof, but testimony as to the respective speeds of the automobile and the train establishes, rather clearly we think, that at such time the train must have been within 200 to 300 feet of the crossing. We hold, as a matter of law, under the facts and circumstances of this case, that a reasonably prudent person, situated as was the deceased, should have known that an attempt to proceed over the crossing ahead of the train, was hazardous. We accordingly hold, as a matter of law, that at the time the train

became 'plainly visible' it was 'in hazardous proximity' to the crossing.

"We cannot hold, however, that the evidence is conclusive that the deceased failed to stop as required by the statute. In this connection it may be noted that in answer to two special issues the jury found that the deceased did not fail to stop within fifty and not less than fifteen feet of the nearest rail, and did not fail to stop after the train became plainly visible and in hazardous proximity to the crossing.

\* \* \* \* \* \*

"\* \* \* There is testimony that after the collision the automobile was found to be in second gear. This testimony may not have been sufficient to sustain a finding that deceased did stop his automobile, a matter we are not called upon to decide. It is sufficient to cast doubt on the testimony of the fireman, particularly when coupled with the presumption that deceased obeyed the law." Missouri-Kansas-Texas Railroad Co. v. McFerrin, supra, 291 S.W.2d at pages 939, 940, 941.

The judgment was reversed because of rulings on the evidence held to be erroneous and the cause remanded for a new trial.

Most of the facts and the pertinent holdings in the Day case, supra, sufficiently appear from the following portions of the Court's opinion:

"The driver of respondent's truck left a cafe on Highway 75, east of the railway tracks, about one o'clock in the morning, turned into Collin Avenue and drove his truck slowly in a westerly direction toward the tracks. He first saw petitioner's train, traveling south, after he had passed over the first three tracks and as he neared the main line track on which the train was approaching from the north. On discovering the approach of the train, he applied his brakes and brought the truck to a halt on the main line track where the collision occurred.

"In answer to special issues the jury found that the train was being operated at a speed of 25 miles per hour, that that was a negligent rate of speed and was a proximate cause of the collision; that the operators of the train failed to keep a proper lookout for others in the lawful use of Collin Avenue, which was a proximate cause of the collision; that in stopping on the main line track the driver of the truck was acting in an emergency; that the truck driver did not fail to keep a proper lookout for approaching trains; that while the truck was stopped on the main line track at a time when it was impossible to stop the train and avoid a collision, that act was not negligent; that the collision was not the result of an unavoidable accident.

\* \* \* \* \* \*

"In this case there is evidence that the respondent's truck driver did not see the train at a time when by the exercise of ordinary care he could have stopped in the statutory area. Before we can hold, therefore, that, as a matter of law, the driver violated his statutory duty to stop in the prescribed area, we must be able to say that the evidence establishes, as a matter of law, that he failed to keep such a lookout for his own safety as a person of ordinary prudence would have kept under the same or similar circumstances.

"As heretofore noted, the jury found that respondent's driver did not fail to keep a proper lookout, and it is our duty to uphold that finding if it is supported by evidence of probative force and reasonable inferences therefrom, considering only the evidence favorable to respondent and disregarding the evidence favorable to petitioner." Texas & New Orleans Railroad Co. v. Day, supra, 316 S.W.2d at pages 404, 405.

In that case, the truck driver testified that his attention had been distracted by

the whistling of a switch engine and the movements of a freight train, both to his left, so that he did not see the train approaching from his right until too late to avert the collision. The Court decided that it was not justified in holding as a matter of law that the truck driver failed to keep a proper lookout, and affirmed the judgment of the Court of Civil Appeals which in turn had reversed the judgment for plaintiff because of error in the trial court's charge and had remanded the cause for retrial. Texas & New Orleans Railroad Co. v. Day, Tex.Civ.App.1958, 308 S.W.2d 245. It would unduly and unnecessarily prolong this opinion to discuss the many Texas Courts of Appeals decisions construing the statute.

Some of the facts in the McFerrin case, supra, are remarkably close to the facts in this case. There, the approaching train first became plainly visible to the motorist when he was fifty feet from the track, approximately the same distance as in this case. The Court held as a matter of law that the deceased should have stopped, but that the evidence was not conclusive that he failed to stop. Admittedly in the case at bar, the truck driver did not stop.

In the McFerrin case, however, there was no testimony that when the motorist first saw the train he could not have brought his automobile to a stop within the statutory distance. Apparently that question was not litigated because the plaintiff chose rather to attempt to prove that the deceased actually did stop his automobile. There is sufficient evidence in the present case from which the jury could find that the approaching train first became plainly visible to the truck driver at a time and under circumstances when, by the exercise of ordinary care, he could not stop within the statutory area. In the McFerrin case, it may have been possible for the motorist to see the approaching train earlier if he had turned momentarily. Here, the jury could find that the freight cars on the storage track absolutely blocked the truck driver's view of the approaching train until he was

49.3 feet from the nearest rail of the track on which the train was moving.

The elements of surprise and of the driver having acted in an emergency were not developed in the McFerrin case as they have been in the present case. That those elements are relevant appears from the opinion in the Day case, supra, which recites that the jury found, " * * that in stopping on the main line track the driver of the truck was acting in an emergency." 316 S.W.2d 402, 404.

Further, Mr. Justice Calvert, the organ of the Court in both the McFerrin and the Day cases, had, about two years before writing the Day opinion, stated in an article in the October 1956 issue of the Texas Law Review (No. 7, Vol. 34):

"It is very generally held that violation of a statute is excusable, and, therefore, is not negligence, if the violation is one that a reasonably prudent person would have committed under the same or similar circumstances while acting in an emergency or in order to avoid a serious hazard or danger which would be encountered through compliance or an effort to comply with the statute, provided the emergency or danger was not a product of the actor's own negligence. A number of Texas court of civil appeals cases are to this effect. Sudden emergency: Phoenix Refining Co. v. Powell, Tex. Civ.App.1952, 251 S.W.2d 892, 895– 97 error ref'd n. r. e.; Groendyke Transport Co. v. Dye, Tex.Civ.App. 1953, 259 S.W.2d 747, 757; Killen v. Stanford, Tex.Civ.App.1943, 170 S.W.2d 792, 793 error ref'd want of merit; White V. Beaumont Implement Co., Tex.Civ.App.1929, 21 S.W. 2d 559, 561; Hicks v. Morgan, Tex. Civ.App.1924, 259 S.W. 263, 265. No sudden emergency: Taber v. Smith, Tex.Civ.App.1930, 26 S.W.2d 722, 725–26. In at least one reported case the trial court seems to have introduced the issue of 'emergency' into a crossing case in which the de-

fenses provided for in article 6701d, § 86(d), were said to be applicable."

The defendant on the trial introduced, as an expert witness, Dr. W. H. Tonn, Jr., who held B.S., M.S., and Ph.D. degrees in engineering from the University of Texas. Dr. Tonn testified upon assumptions of which there was substantial evidence: that the truck was loaded with 3750 gallons of milk; that the road was of dry asphalt surface; that if the driver hit the brake both the tractor brakes and the trailer brakes would go on; and that the truck's speed was 20 miles an hour. Upon such assumptions, Dr. Tonn testified that it would take 42 feet to stop the truck.[1]

██ There was evidence from which the jury could find that the approaching train failed to sound the bell and whistle warning signals; that, in the absence of such warnings, the truck driver was not negligent in approaching the statutory stopping area at a speed of twenty miles per hour; and that there was no fault on the part of the truck driver in failing to discover the approaching train until the front end of the tractor was 49.3 feet from the nearest rail of the main line. Thus, both assuming the jury to be bound by the opinion of Dr. Tonn and disregarding any element of surprise or emergency, the driver could not have brought the truck to a stop until the front end of the tractor was 7.3 feet from the nearest rail of the main line, or probably within less than 5 feet of the danger zone, allow-

ing for the distance the side of the train overhangs the rails. That is, of course, closer than the statutory stopping distance of "not less than fifteen (15) feet from the nearest rail." The statute does not require such nicety of judgment. If, a driver himself free from fault, finds it impossible to stop his vehicle at least fifteen feet from the nearest rail, then the statute becomes inoperative, and at a distance closer to the rail than the statutory stopping area, the driver is under the common-law duty of due care, rather than the statutory duty to stop.

██ Moreover, Dr. Tonn's opinion evidence was not absolutely binding on the jury (compare Footnote 1, supra). Further yet, in the present case, it was open to the jury to find that, through no fault of his own, the driver had been placed in a position of extreme emergency, and that, under the same or similar circumstances, a reasonably prudent person would do as this driver did; namely, think that he could not stop in time to avert the collision and attempt to get the tractor portion of his vehicle across the main line. We conclude that the district court did not err in denying the defendant's motions for instructed verdict and judgment notwithstanding the verdict.

Before the jury retired the defendant objected, stating distinctly the grounds of its objection, to the following paragraphs of the court's oral instructions to the jury, which paragraphs immediately

1. Dr. Tonn explained that that included a three-quarter-second reaction time. "Well, from the time that a person is on notice that they want to apply the brake on their vehicle, it takes three-quarters of a second from the time your eye sees it and tells your brain to do it, to apply them. During that time, there is no deceleration, no application of brakes, then the brakes are applied." If reaction time be considered, Dr. Tonn's testimony applies a standard at least as strict as the requirement of Article 6701d, Sec. 132(b), which provides:

"(b) Performance ability of brakes. Every motor vehicle or combination of motor drawn vehicles shall be capable at all times and under all conditions of loading, of being stopped on a dry, smooth, level road free from loose material, upon application of the service (foot) brake, within the distance specified below, or shall be capable of being decelerated at a sustained rate corresponding to these distances:

"Feet to stop from
20 miles per hour
"Vehicle or combination
of vehicles having brakes
on all wheels ..............30"

If to this 30 feet we add the 22 feet which a 20 mph. vehicle would travel in three-fourths of a second allowed for reaction time, we get 52 feet, considerably more than the 42 feet which Dr. Tonn testified it would take to stop the truck.

followed the reading of the statute heretofore discussed:

"You are further instructed that although a person may be guilty of a technical violation of the statute, if such technical violation is under such circumstances that justify or excuse it, then it is solely within the province of the jury to decide whether or not the failure to stop their vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the track upon which the train is being operated, constitutes negligence in the light of all of the attending facts and circumstances.

"In this connection I instruct you that a railroad crossing is extra hazardous if there are obstructions to the view of an approaching train by the traveling public whether on the railroad right-of-way or on the adjoining land; or where the crossing was both obstructed as to the view of the approaching trains and was frequently used by the traveling public.

"You are also instructed that the crossing involved in this lawsuit would be called an extra hazardous one in law if you should find from the evidence that its condition was such that a reasonably prudent person could not by the exercise of ordinary care use the same with safety to himself and his vehicle."

■ The court did not give the jury any definition or guide as to what would constitute a "technical violation of the statute." It did not inform the jury that a violation of the statute was a "technical violation" only when the circumstances were such that it was impossible for a driver, himself free from fault, to comply with the statute. In effect, the instructions left the jury free to determine for itself questions of law as to the effect of the statute and to disregard any violation which, in the jury's discretion, it found to be "under such circumstances that justify or excuse it." In our opinion, that was prejudicial error necessitating a re-trial of the case.

■ Further, while the third paragraph of the quoted instructions correctly defined an extra-hazardous crossing,[2] the second paragraph, when coupled with the defendant's admission that the freight cars standing on the storage track constituted some obstruction to the driver's view of the approaching train, in effect advised the jury that the defendant had maintained an extra-hazardous crossing.

We have been cited to and have found no authority which would authorize the court to charge the jury that the obstruction of the standing freight cars rendered this crossing extra-hazardous as a matter of law. Indeed, we do not think that the district court intended so to instruct the jury. The language it employed, however, might well have conveyed that meaning to the jury.

True, the court did not go further and instruct the jury as to the defendant's duty at an extra-hazardous crossing, and it denied the plaintiff's requested instruction that if the jury found the crossing extra-hazardous then the defendant had the duty of placing a flagman or other signaling device at this crossing. It would, however, be unrealistic for us to hold that, by not explaining the legal effect of an extra-hazardous crossing, the charge was rendered harmless. To the contrary, that omission was an added error which left the jury free to determine such legal effect for itself.

For the errors in instructing the jury, the judgment is reversed and the cause remanded.

Reversed and remanded.

2. Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App.1921, 228 S.W. 133, 136, 16 A.L.R. 1264; Phillips v. Texas & Pacific Ry. Co., Tex.Civ.App.1949, 223 S.W.2d 258, 261.