MISSOURI PACIFIC RAILROAD COMPANY, Appellant,

v.

John OWEN, Appellee.

No. 19230.

United States Court of Appeals Fifth Circuit.

Aug. 17, 1962.

Rehearing Denied Sept. 27, 1962.

---

J. Lev Hunt, Leslie S. Lockett, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for appellant.

Charles G. Lyman, Lyman & Sudduth, Corpus Christi, Tex., J. H. Fugate, Jr., Kingsville, Tex., for appellee.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

By general verdict, the jury awarded appellee, John Owen, $15,000.00 for personal injuries and other damages sustained by him when his pickup truck was struck by a diesel locomotive of appellant, Missouri Pacific Railroad Company, at a grade crossing in the outskirts of the City of Kingsville, Texas. The necessary facts will be set forth as each of the questions of law raised before us is discussed.

The case was submitted to the jury on the two charges of negligence upon which appellee relied: (1) the failure to sound the whistle or horn or ring the bell, as required by Article 6371, Vernon's Ann.Civ.St.;[1] and (2) that because the crossing was extra-hazardous, the Railroad should have had a flagman, gate or signaling device thereat. The appellant Railroad, besides denying the negligence alleged by appellee, charged that Owen was contributorily negligent in failing to stop, as required by Texas law, and in failing to keep a proper lookout;[2] and the Railroad further charged that the district court erred in instucting the jury that they could return a verdict for the appellee if the crossing in question was extra-hazardous, alleging that the evidence failed to create a fact issue as to such condition.

---

1. Appellee's brief sets forth the pertinent parts of said Article as follows:

"A bell of at least thirty (30) pounds weight and a steam whistle, air whistle or air siren shall be placed on such locomotive engine, and the steam whistle, the air whistle or air siren shall be sounded and the bell rung at a distance of at least eighty (80) rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road, or stopped; * * * and the corporation operating such railways shall be liable for all damages which shall be sustained by any person by reason of any such neglect; * * *."

2. Appellant quotes in its brief § 86 of Article 6701d of the Revised Civil Statutes of Texas upon which it relies, pertinent parts of which are:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:
* * *

"(c) a railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) an approaching train is plainly visible and is in hazardous proximity to such crossing."

We shall defer discussion of the extra-hazardous-crossing question until the extended arguments of the parties with respect to the two Texas statutes have been disposed of.

Appellant's position with respect to the bell and whistle statute and the duty-of-a-motorist-to-stop statute is thus epitomized in its specification of error No. 3:

"The District Court erred in instructing the jury, on the one hand, that any violation by appellant of Article 6371, Texas Civil Statutes was negligence as a matter of law and that appellant was liable for all damages, while on the other hand, also instructing the jury that any violation by appellee of Article 6701d, Section 86, Texas Civil Statutes, was only a circumstance which could be considered by the jury in determining whether appellee was contributorily negligent."

Stated a little differently, the Railroad argues that if it is to be impaled upon the signal statute by a holding that a failure to give the statutory signals proximately causing damage makes out a case against the Railroad as a matter of law, even-handed justice would require that a motorist injured by his own action in failing to comply with the Stop Law Statute should be denied recovery as a matter of law. The same argument has been made to the Texas Courts, which have rendered a number of deci-

sions which are controlling on us in this case. And we have construed these Texas statutes and applicable Texas decisions in a case involving facts quite similar to those presented here—the recent case of Texas and New Orleans Railroad Co. v. Dairyland Transport Corporation, 5 Cir., 1959, 266 F.2d 283.[3] It would serve no good purpose for us to repeat here the discussions we went into so thoroughly in Dairyland and the conclusions we there announced.

Appellant quotes in this case the charge of the court below with respect to the consequences which it held would follow a failure to give the statutory signals proximately causing injury;[4] and, as contrasting with that charge, it sets forth the language used by the court below in its charge respecting the alleged contributory negligence of appellee.[5] Appellant follows with its chief argument couched in these words:

"We submit that the two statutes are equally positive and certain. Under recent decisions of the Supreme Court of Texas the manner of submission of plaintiff's negligence under Art. 6701d, Section 86, was proper. The same standard should have been, but was not, applicable to defendant's acts. As to the defendant's alleged violation, if there was such, the jury was ordered to find this was negligence. As to plaintiff's alleged violation, the jury

---

3. And cf. a railroad crossing accident case arising in Georgia in which we discussed the Texas statutes, Southern Railway Co. v. Jolley, 5 Cir., 1959, 267 F.2d 934.

4. "Any failure of the railroad to comply with those requirements is negligence, and by statute renders the defendant railroad liable for all damages which shall be sustained by any person which are proximately caused by such failure. * * * If you find that the locomotive engine of the defendant did not blow an air whistle * * * and did not ring a bell at a distance of at least 80 rods from the crossing with Corral Street, and further that it failed to keep the bell ringing until the locomotive engine crossed West Corral Street, and that this

failure to do so was a proximate cause of the injuries complained of by the plaintiff John Owen, and if you have not found the plaintiff John Owen negligent in any respect, then you must find for the plaintiff."

5. "The test to be applied in determining the railroad's claim that plaintiff was negligent and that his claimed negligence was a proximate cause of the collision is whether plaintiff used that degree of care which an ordinarily prudent person, in the exercise of ordinary care, would have used under the same or similar circumstances in his manner of approaching the railroad track and in going upon the same."

was told to consider what a prudent man would have done.

"Appellant's counsel recognizes that until recently the Texas courts followed a rule that the violation of a statute was negligence per se. But it is crystal clear that the later decisions of the Texas courts, both the Supreme Court and the Courts of Civil Appeals, have rejected that rule and applied the 'prudent man' test as was done, with a lengthy discussion by Mr. Justice (now Mr. Chief Justice) Calvert, in Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931."

In other words, the Railroad argues that Texas decisions as to negligence created by statute are in a state of flux and that such decisions as McFerrin, supra (Tex.Civ.App., 1956) and Texas and New Orleans Railroad Co. v. Day, S.Ct.Tex., 1958, 159 Tex. 101, 316 S.W. 2d 402, demonstrate a trend towards holding that questions of negligence arising from violation of statutes should be left to the determination of the jury under all of the facts and circumstances present in each case, rather than to a determination by the court that the violation of the statutes amounts to negligence per se. And it claims that we have recognized this trend in our decision in T. & N. O. R. Co. v. Dairyland Transport Corp., supra, and in Warren Petroleum Co. v. Thomasson, 5 Cir., 1959, 268 F.2d 5.

■ As stated, we considered this whole argument in the Dairyland Transport case, supra, and we followed the holdings of the McFerrin and Day cases. No later Texas cases are brought to our attention now, and we adhere to the principles we followed in Dairyland, and decline to assay the trend of Texas decisions or to resolve the alleged inconsistency between them with respect to these two statutes. We are sitting here as a Texas court, and our duty under the circumstances and the facts of this case is not to essay to fashion a body of law for the Texas courts, but rather to discover what the Texas rules are and to apply them. We think from a careful study of the record that, under existing Texas decisions, an issue of fact was presented as to whether Owen was contributorily negligent and that the trial court properly submitted it, as well as the question whether the Railroad negligently failed to comply with Article 6371, to the jury; and that no reversible error was committed in connection with these questions.

■ But it is our opinion that the court erred in submitting to the jury the question whether the crossing was extra-hazardous and should have been protected by a flagman, gate or signaling device. Before a principle of law relied on by a party as defining liability of his adversary may be submitted to a jury as a basis for decision, the court must decide first whether, as a matter of law, there was sufficient credible evidence supporting the principle to warrant such submission. We agree with appellant that this record fails to set forth evidence sufficient to warrant a finding by the jury that the crossing was extra-hazardous.

The point was properly presented by the Railroad in its objection to the charge of the court.[6] The testimony on this point by Owen himself was indefinite. When asked what there was on

---

6. Pertinent portions of the court's charge on this issue are:

"If you find that the tank on the railroad right of way and/or the trees, brush, or cattle pen on John Owen's left as he approached the railroad track interfered with or obstructed his view, and that by reason thereof the crossing was an extra-hazardous one, then you may find that the railroad was negligent in failing to have a signaling device or a flagman or gate at said crossing. * * *

"In this connection, I charge you that by the term 'extra hazardous crossing' is meant a particular crossing which is shown to be more than an ordinarily dangerous one, attended with unusual or extra hazard, a crossing so peculiarly dangerous that prudent persons cannot use the same with safety * * *"

his left "that might in any way have interfered with your vision of the railroad track to your left," he responded:

"There was a fence-row with brush on it. There was a cattle pen in the right of way of the railroad. There was a tank, which I just called the measurements on, that was standing there. And approximately, that was all that would keep me from seeing anything."

He testified that the tank foundation was twenty-two feet from the nearest point of the street on which he was traveling and twenty-seven feet ten inches from the near rail of the track. The tank structure was nineteen feet four inches high. The tank had a diameter of seven feet eight inches and lay on its side and was pointed towards the track at an angle approximating that of the road. By other witnesses, he proved that there was a "good deal" of vehicular traffic on the street he was traveling, and "quite a bit" of switching carried on up and down the railroad track.

The record before us contains a large drawing showing the location of the physical structures and possible obstructions at and near the crossing, and eight photographs (eight by ten inches) which were made by a commercial photographer on the third day after the collision. He was using a standard lens, and testified that the camera he was using and the method he employed in making the pictures did not produce distortion of size or distance. Both Corral Street, upon which Owen was riding, and the railroad track for long distances were straight, the road was newly paved and smooth, and the track was raised a perceptible distance above the general level of the road. The angle to the driver's left, as he approached the single railroad track which crossed the street, was one hundred thirty-six degrees, so that one traveling the highway as Owen was would be looking at an angle of less than forty-five degrees towards an engine approaching him on the track.

When Owen's car passed the near side of a dirt road which paralleled the railroad on his left, and when he was substantially one hundred eight feet from the center of the crossing, he passed the fence row and brush which he mentioned. These were on private property and were across the dirt road from the right of way of the railroad and approximately seventy-two feet at right angles from the near rail of the track. The accident happened January 3rd and the small trees were substantially defoliated and the photographs showed that an ordinary diesel engine was clearly visible through these trees and the fence row. The territory around the crossing appears from the photograph to be of a suburban nature, the structures being few and none of them close to the track except the small tank and the cattle loading chute.

The cattle chute was a sufficient distance from the crossing to be ruled out as any important factor in the accident or in the general situation surrounding the crossing. The approach to the crossing was marked by the regular crossarm railroad signal and also a smaller sign a short distance further removed from the railroad. Owen was familiar with the crossing and had passed it regularly. He had worked with those who had installed the tank.

The tank, therefore (it had been removed long before the trial, which took place some three years after the accident), remains as the chief item which might establish that the crossing was an unusually dangerous one. According to plaintiff's figures, the tank was so situated that when a person on Corral Street approached the crossing, he had unlimited vision down the railroad track towards the engine when he reached a point thirty-eight feet from the near rail measured along the center line of the street. The photographs show that the tank was not large enough to obscure more than half of the diesel engine, so that one looking to his left down the railroad track would never

lose sight of an engine approaching from Owen's left.

Taking, therefore, Owen's testimony and measurements as correct and accepting what is shown indisputedly by the sketch and the eight photographs (cf. Illinois Central Railroad Co. v. Underwood et al., 5 Cir., 1956, 235 F.2d 868, 873), it is clear that the crossing here involved is an ordinary suburban crossing, subject to the hazards of all grade crossings but none of an unusual variety which would warrant classifying the crossing extra-hazardous. We do not have any curves, cuts or embankments, large buildings near the track or the road or any lack of visibility arising from parked railroad cars; or any condition arising from natural topography in the vicinity of the crossing or such impediments to vision either by the motorist or the enginemen as are found in the cases in which the courts have permitted juries to classify crossings as extra-hazardous.

The placing of safety devices at crossings, such as gates, lights, flashing signals, gongs or a flagman, is generally covered by statute or city ordinance, and the general rule is that, in the absence of such statute or ordinance, the railroad is not under the duty to provide these special precautions. We do not mean to imply that liability can be predicated upon the dangerous crossing doctrine only by ordinance or statute. We hold merely that, under the facts of this case, there was no proof sufficient to warrant the jury in finding that this crossing was an extra-hazardous one, and we think it was reversible error for the court to submit the question to the jury.[7]

The judgment of the court below is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

7. Cf. Karr v. Panhandle, etc. Co., S.Ct. Tex., 1953, 153 Tex. 25, 262 S.W.2d 925; T. & N. O. Ry. Co. v. Brannen et al., Comm. of App., Texas, opinion adopted by Supreme Court, 1942, 140 Tex. 52, 166 S.W.2d 112; T. & N. O. Ry. Co. v. Stratton, et al., Tex.Civ.App., 1934, 74 S. W.2d 746 (writ refused); Muniz v. Panhandle, etc. Co., Tex.Civ.App., 1955 (RNRE), 285 S.W.2d 809; Greeson v. T. & P. Ry. Co., Tex.Civ.App., 1958, 310 S.W.2d 615 (RNRE); 44 Am.Jur., Railroads, § 520, pp. 764–765; and Annotation, 5 A.L.R.2d 149.