**FORT WORTH & DENVER RAILWAY COMPANY, Appellant,**

**v.**

**RED BALL MOTOR FREIGHT, INC., et al., Appellees.**

**No. 16558.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 13, 1964.

Rehearing Denied Dec. 11, 1964.

Tilley, Hyder & Law and Thomas H. Law, Fort Worth, Friberg & Parish and J. Walter Friberg, Wichita Falls, for appellant.

Nelson & Sherrod and Eugene Sherrod, Jr., Wichita Falls, for appellees.

MASSEY, Chief Justice.

A truck collided with the boxcar of a switching train as the latter was backed across a highway in Wichita County in the early morning hours of August 10, 1961. The train was moving slowly. The truck was struck when it was about one-half way across the tracks. Force of the collision "flopped" the truck over on its side; $4,143.25 in damages resulted.

From a judgment for the plaintiff Red Ball Motor Freight, Inc., the defendant Fort Worth & Denver Railway Company appealed. The latter concern will be hereinafter termed as the Railroad.

Judgment is affirmed.

We have no doubt but that the evidence raised the issues upon the defendant Railroad's negligence amounting to proximate cause of the collision which resulted. The jury found it to have been guilty of negligence which was a proximate cause of the collision and the damages thereby occasioned to the plaintiff, and such findings were not against the great weight and preponderance of the evidence. Since we do not consider that any substantial question is presented thereon we will not lengthen this opinion by a discussion.

What is a substantial question is the matter of contributory negligence on the part of the driver of plaintiff's truck and trailer. Of importance to raise the question and invoke our responsibility of determination are the Railroad's third and fourth points of error. Therein is asserted that the trial court should have sustained its motion for judgment non obstante veredicto, and that the plaintiff's driver was guilty of contributory negligence as a matter of law in failing to stop and avoid driving onto the crossing, particularly in that he failed to heed the flagman standing in the street and waving a lantern at a place where said driver knew there was a railroad crossing.

Article 6701d of Vernon's Ann.Tex.Civ. St., "Uniform Act Regulating Traffic on Highways", Art. XI, "Special Stops and Restricted Speed Required", at § 86 contains provisions relative to a motorist's duty to observe signals indicating approach of trains. In compliance with § 86 the driver of any motor vehicle is required to bring his vehicle to a stop when, "(a) * * *; (b) * * * when a human flagman gives or continues to give a signal of the approach or passage of a train; (c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard; (d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

It has been held in Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956), that before there comes into existence a duty to stop in compliance with pertinent provisions of the statute the train approaching the crossing must be plainly visible and in hazardous proximity thereto; — and that before the duty becomes absolute in a particular case so as to form the basis for an instructed verdict (because the motorist is to be deemed contributorily negligent as a matter of law), all the conditions applicable under the section, as applied to the pertinent subsection, must be conclusively established.

The subsection(s) directly treated in the McFerrin case involved the motorist's actual or imputed knowledge of the approach of the train because it was plainly visible and/or because of notice of its presence was given by the requisite signal. In either event, of course, would be involved the element of the approach of the train upon the crossing in hazardous proximity thereto. Here the important subsection is 86(b) in that immediately prior to the collision there actually was a human flagman giving a signal of the approach of the train upon the crossing to plaintiff's driver. Other subsections were involved but are readily disposed of against the contention of the Railroad in that the circumstances disclose that any timely, actual, or imputed knowledge of plaintiff's driver would have initially become existent, if at all, as the result of the presence and activity of the flagman.

We believe that there would be no material difference in the law and its applicability as applied to a question arisen under subsection 86(b) than under subsection 86 (d). If signals imparted by a flagman are both observed and understood by an approaching motorist to signify that a train is approaching in hazardous proximity to the crossing, then from and after they are so observed and understood by the motorist there would be no difference from the condition existent had he originally observed the train approaching upon and in hazardous proximity to the crossing.

In this case there is evidence of the insufficiency of the means whereby the flagman endeavored to signal plaintiff's driver. What was used was the lantern a brakeman uses to signal the engineer. The evidence raised as an issue of fact and the jury found that the device was not of sufficient type and strength to adequately flag traffic and that this was negligence and a proximate cause of the collision.

There was evidence that from the point on the highway where the plaintiff's vehicle was situated when the activity of the flagman did in fact cause plaintiff's driver to know and realize that a train was approaching and was in hazardous proximity to the crossing he could not have stopped plaintiff's truck in time to prevent its going upon the crossing in front of the train. Findings of the jury acquitted the driver of any negligence with respect to speed and lookout and we are of the opinion that these findings were not against the greater preponderance of the evidence.

In view thereof much that is said in the case of Texas & New Orleans R. Co. v. Dairyland Transp. Corp., 266 F.2d 283 (5th Cir., 1959), is appropriate and would have application in the instant case. See also Texas & New Orleans Railroad Co. v. Day, 159 Tex. 101, 316 S.W.2d 402 (1958); Calvert, "Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes", 34 Tex.Law Review 971 (1956).

 Our holding is that contributory negligence was for the jury. It was not resolved as a matter of law.

The Railroad's final three points of error relate to the matter of the "safety history" of the crossing where the collision occurred. Fred Smith was a witness for the Railroad. It is contended that the trial court erred in denying leave to introduce his testimony that he had never heard of any prior collisions at the crossing, and his testimony that the Railroad records do not reflect that any prior collisions had occurred there. Further, it is contended that the trial court erred in refusing to permit the Railroad to argue to the jury that there was no evidence of any prior accidents at the crossing.

 The record does not reflect the substance of the testimony which the Railroad contends was erroneously excluded. The point of error on the argument is not substantiated by any bill of exceptions. Argument in the case was not brought forward. The points are overruled.

Judgment is affirmed.