**SOUTHERN PACIFIC RAILROAD,**
**Appellant,**
v.
**Miguel Enrique MONTALVO, Appellee.**

**No. 25365.**

United States Court of Appeals
Fifth Circuit.

June 28, 1968.

Fred B. Wagner, Brownsville, Tex., for appellant.

Thomas G. Sharpe, Jr., Hardy & Sharpe, Brownsville Tex., of counsel, for appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

GODBOLD, Circuit Judge:

This is an appeal from a jury verdict for the plaintiff in a case arising out of the collision of plaintiff's car with a train at a Texas grade crossing.

 Southern Pacific contends that the issue of contributory negligence of the plaintiff under Vernon's Ann.Tex. Civ.Stat. Art. 6701d, § 86 (Vernon ed. 1960),[1] was not properly submitted to the jury. In his oral charge, to which the railroad makes no objection, the judge instructed on the elements of sub-sections (c) and (d) of § 86, then he submitted as one of the special interrog-

atories, "Was Manuel Montalvo negligent in failing to stop within 50 feet, but not less than 15 feet, from the nearest rail of the railroad tract [sic]." The railroad asserts that the court was required to submit specific interrogatories on the presence or absence of the factual incidents covered by sub-sections (c) and (d) and that contributory negligence was then a question of law for the court to be based on the answers to the factual inquiries and could not be submitted to the jury.[2] Numerous Texas state authorities are cited concerning special issue submission. But the district court has the broad authority given by Fed.R.Civ.P. 49 and is not bound by state procedures on special issues. 5 Moore, Federal Practice, ¶¶ 49.01–.03 (2d ed. 1967). Negligence is a factual determination for the jury, Ratigan v. New York Cent. R.R., 291 F.2d 548 (2d Cir.), cert. denied, sub nom. New York Cent. R.R. v. Interstate Commodities, Inc., 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed. 2d 89 (1961).[3]

The rationale of the railroad is that if the factual matter recited in sub-section (c), or that in (d), is determined by the jury to exist the driver is under an absolute duty to stop within 50 feet of the crossing, and failure of the driver to do

---

**1.** "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\* \* \* \* \*

"(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

**2.** The oral instructions phrased the matter of audibility of the signal, if emitted, in terms of whether an ordinarily prudent person would have heard it, and the matter of plain visibility in terms of whether a reasonably prudent driver in

plaintiff's situation should have seen the train, and the matter of hazardous proximity in terms of whether a reasonably prudent person in plaintiff's situation should have known that an attempt to proceed over the crossing ahead of the train was hazardous. Southern Pacific does not claim that these common law standards of the reasonably prudent driver were improperly applied, and interrogatories which it requested embraced the common law standard on the questions of plain visibility and hazardous proximity. This is consistent with Missouri-Kansas-Texas R.R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956).

**3.** In *Ratigan* it was held improper to have the jury attempt to decide the difficult legal questions of whether the railroad's negligence was active or passive, but submission of the question of whether the railroad was negligent was properly given to the jury along with various interrogatories on underlying facts.

so requires a conclusion of contributory negligence per se, so there can be no basis for jury consideration of whether plaintiff was guilty of contributory negligence. As to sub-section (c) this theory ignores the fact that the jury in answer to a special interrogatory found that the engine when approaching within approximately 1500 feet did not emit a signal audible from such distance. As to sub-section (d), the Texas cases do refer to failure of the automobile driver to stop when the train is plainly visible and in hazardous proximity to the crossing as contributory negligence per se. Southern Pac. Co. v. Alex, 411 S.W.2d 413 (Tex.Civ.App.1967); Missouri-Kansas-Texas R.R. v. McFerrin, supra. But that principle does not preclude submission to the jury, where the evidence raises it, of the question whether the driver could or could not stop his automobile within the statutory stopping area by the exercise of due care after the train became visible and in hazardous proximity to the crossing. Southern Pac. Co. v. Alex, supra, refers to this as the burden on the driver of establishing that his violation of the statute was legally excusable because of impossibility of complying with it. 411 S.W.2d at 416. In Texas & N.O.R.R. v. Dairyland Transp. Corp., 266 F.2d 283 (5th Cir. 1959), this court distinguished the McFerrin case as follows:

> In the McFerrin case, however, there was no testimony that when the motorist first saw the train he could not have brought his automobile to a stop within the statutory distance. Apparently that question was not litigated because the plaintiff chose rather to attempt to prove that the deceased actually did stop his automobile. There is sufficient evidence in the present case from which the jury could find that the approaching train first became plainly visible to the truck driver at a time and under circumstances when, by the exercise of ordinary care, he could not stop within the statutory area.
>
> \* \* \* \* \* \*
>
> The elements of surprise and of the driver having acted in an emergency were not developed in the McFerrin case as they have been in the present case.

Id. at 288. See also Warren Petroleum Co. v. Thomasson, 268 F.2d 5 (5th Cir. 1959). In Ft. Worth & Denver Ry. Co. v. Red Ball Motor Freight, Inc., 384 S. W.2d 729 (Tex.Civ.App.1964), the court cited *Dairyland* with approval in affirming a verdict for the plaintiff where there was evidence that from the point on the highway at which the plaintiff could know that the train was approaching and in hazardous proximity he could not have stopped short of the crossing.

The evidence in the present case did raise an issue of inability to stop, which the trial judge in his discretion could submit to the jury for determination as a separate question of fact or with appropriate oral instructions as part of the inquiry whether plaintiff was himself guilty of negligence.[4]

■ The loss of future earning capacity was properly submitted to the jury as an element of damages. There was evidence of the nature of the injuries, and of the type of employment engaged in by plaintiff, from which the jury could infer loss of earning capacity.

■■ The railroad also specifies as error that there was not proper proof of the reasonableness of medical bills incurred for the services of doctors who were called into consultation by the treating physician. The treating physician testified that the charges of the consulted doctors were reasonable, and there was evidence that he was familiar with the services they had performed. There is

---

4. The plaintiff requested a special interrogatory on inability to stop, but it was not submitted to the jury. The railroad made no such request, and objected to given interrogatories on the same theory argued in this court, that once plain visibility and hazardous proximity were found there was no scope for further jury inquiry.

no rule that as a matter of law each doctor who performs services must appear and personally testify to the reasonableness of his charge.

Affirmed.