TEXAS AND NEW ORLEANS RAILROAD COMPANY V. EARL DAY.

No. A-6672. Decided October 8, 1958.
(316 S.W. 2d Series 402)

*Baker, Botts, Andrews & Shepherd,* of Houston, *Dawson & Dawson,* of Corsicana, and *Frank A. Woods,* of Franklin, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff's employee was not guilty of contributory negligence as a matter of law and in failing to reverse the judgment of the trial court and render a judgment in favor of petitioner, railroad company. Gulf, C. & S. F. Ry. Co. v. Russell, 125 Texas 443, 82 S.W. 2d 948; Texas & Pac. Ry. Co. v. Shoemaker, 98 Texas 451, 84 S.W. 1049; McFall v. Fletcher, 138 Texas 93, 157 S.W. 2d 131.

*J. C. Jacobs* and *Robert C. Jackson, Jr.,* both of Corsicana, for respondent Earl Day.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Respondent, Day, sued petitioner, Texas & New Orleans Railroad Company, for damages to his truck-trailer resulting from a collision with petitioner's train at a street crossing in the City of Corsicana. A trial court judgment for respondent was

reversed by the Court of Civil Appeals and the cause was remanded for retrial. 308 S.W. 2d 245. Reversal was ordered because of error in the trial court's charge.

Both parties applied for writ of error and both applications were granted. It is the contention of respondent that the trial court's charge was not erroneous and that the Court of Civil Appeals erred in reversing the trial court's judgment. It is the contention of petitioner that it was entitled to an instructed verdict and that the Court of Civil Appeals should, therefore, have rendered judgment in its favor. We overrule both contentions and affirm the judgment of the Court of Civil Appeals.

As shown by a diagram in the opinion of the Court of Civil Appeals (308 S.W. 2d 246) Collin Avenue, running east and west through the City of Corsicana, at one point crosses a series of eight tracks owned by petitioner. The total distance between the outermost tracks is 185 feet. The collision took place on the main line track, the fourth track from the easternmost track.

The driver of respondent's truck left a cafe on Highway 75, east of the railway tracks, about one o'clock in the morning, turned into Collin Avenue and drove his truck slowly in a westerly direction towards the tracks. He first saw petitioner's train, traveling south, after he had passed over the first three tracks and as he neared the main line track on which the train was approaching from the north. On discovering the approach of the train, he applied his brakes and brought the truck to a halt on the main line track where the collision occurred.

In answer to special issues the jury found that the train was being operated at a speed of 25 miles per hour, that that was a negligent rate of speed and was a proximate cause of the collision; that the operators of the train failed to keep a proper lookout for others in the lawful use of Collin Avenue, which was a proximate cause of the collision; that in stopping on the main line track the driver of the truck was acting in an emergency; that the truck driver did not fail to keep a proper lookout for approaching trains; that while the truck was stopped on the main line track at a time when it was impossible to stop the train and avoid a collision, that act was not negligent; that the collision was not the result of an unavoidable accident.

One of petitioner's defenses to the suit was based on an alleged violation by the truck driver of the duties imposed by Sec.

86(d) of Article 6701d, Vernon's Annotated Texas Statutes, which reads as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\*   \*   \*   \*

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

The defense was submitted in a series of special issues, all related to Special Issue No. 21, which reads as follows:

"Which do you find from a preponderance of the evidence:

(a) That the plaintiff's employee stopped his truck within fifty feet but not less than fifteen feet from the nearest rail of such railroad track, or

(b) That he failed so to stop his truck?

Answer: 'He did so stop,' or 'He failed so to stop.' "

The jury answered: "He did so stop."

The principal grounds on which petitioner asserts that it was entitled to an instructed verdict are that the evidence establishes conclusively and as a matter of law that the operator of the truck failed to keep a proper lookout and that he violated his statutory duty to stop his truck within the area prescribed by Article 6701d, Sec. 86(d), supra, before going upon the track on which the train was approaching.

■ Whether the truck operator was under a statutory duty to stop within fifty feet but not less than fifteen feet of the nearest rail of the main line track on which the train was approaching must be tested by the rules laid down in our interpretation of the statute in Missouri-K-T Railroad Co. of Texas v. McFerrin, 156 Texas 69, 291 S.W. 2d 931. We there held that a motorist approaching a railroad crossing is under no statutory duty to stop in the prescribed area unless a train is approaching on the track, is "plainly visible," and is "in hazardous proximity."

And we said that a train is not "plainly visible" within the meaning of the statute unless "a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it." 291 S.W. 2d 936. In other words, our opinion and holding in the McFerrin case make clear (and the holding is made more pointed by the concurring opinion) that there is no statutory duty on a motorist approaching a crossing to stop unless a train is approaching on the track and is seen or should be seen by one similarly situated who is keeping a proper lookout for his own safety.

In this case there is evidence that the respondent's truck driver did not see the train at a time when by the exercise of ordinary care he could have stopped in the statutory area. Before we can hold, therefore, that, as a matter of law, the driver violated his statutory duty to stop in the prescribed area, we must be able to say that the evidence establishes, as a matter of law, that he failed to keep such a lookout for his own safety as a person of ordinary prudence would have kept under the same or similar circumstances.

■ As heretofore noted, the jury found that respondent's driver did not fail to keep a proper lookout, and it is our duty to uphold that finding if it is supported by evidence of probative force and reasonable inferences therefrom, considering only the evidence favorable to respondent and disregarding the evidence favorable to petitioner. Cartwright v. Canode, 106 Texas 502, 171 S.W. 696; Renfro Drug Co. v. Lewis, 149 Texas 507, 235 S.W. 2d 609, 613, 23 A.L.R. 1114.

■ The operator of the truck testified that as he turned into Collin Avenue from Highway 75 and approached the series of eight tracks he heard the whistling of a train which continued at intervals until the collision occurred, but that the whistling was coming from a switch engine to his left which appeared to be switching back and forth; that he heard no kind of horn, whistling or bells to his right; that as he approached the tracks he saw a freight train standing to his left, or to the south, with a caboose, "lighted up," about fifteen or twenty feet south of the south edge of the street; that he stopped at a distance of about twenty-five feet from the first of the series of tracks, some 138 feet from the main line track, for fifteen to twenty seconds, and looked up and down the track in both directions before proceeding further but did not see a train approaching from his right, because "that train hadn't even come around the curve;" that he started moving forward across the tracks at a rate of

speed of seven to ten miles per hour, meanwhile hearing the whistling of the switch engine on his left and the sound of its diesel engine running, and meanwhile also watching the caboose on the freight train to his left because "they have a habit of going back and forth across the street a lot" and he "didn't know whether it was going to back up or go forward," and he was "watching it to keep it from backing over" him; that the first track he reached was a switching track, the second was a dead track, and the fourth was the main line track, but that he did not know any of those facts at the time; that from the time he started moving forward he did not again look to his right until he was even with the standing freight train and caboose; that he then looked to his right, saw the approaching train at a distance of approximately 550 to 650 feet and heard its whistle blowing, but did not know and could not tell which track it was on; that he put on his brakes and stopped his truck as quickly as he could, and then attempted to throw in the reverse gear and back off the track but was unable to do so before the collision.

Before we are justified in holding as a matter of law that the truck operator failed to keep a proper lookout his conduct in that respect must have been "so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person" would have acted as he acted, under the same or similar circumstances. Gulf, Colorado & S.F. Ry. Co. v. Gascamp, 69 Texas 545, 7 S.W. 227, 228; Lang v. Henderson, 147 Texas 353, 215 S.W. 2d 585, 587; Renfro Drug Co. v. Lewis, 149 Texas 507, 235 S.W. 2d 609, 621, 23 A.L.R. 1114.

Petitioner does not question but that there is evidence to support a conclusion that the truck operator stopped short of the series of tracks and looked in both directions before proceeding forward. Its claim to an instructed verdict is based entirely upon the fact that he did not look to the right again in the interval between the first time he looked and the second time he looked when he actually saw the train. Petitioner says that had the operator looked in that interval he surely would have seen the the train at an earlier time because his view was unobstructed and the train had oscillating and beam lights shining. Conceding that the approaching train could have been seen by the operator had he looked to the right on a second occasion at an earlier time, his failure to do so should not be held to convict him of failure to keep a proper lookout, as a matter of law, unless we can say that under the same or similar circumstances no prudent man would have acted as he did. What we said in

Texas & P. Ry. Co. v. Day, 145 Texas 277, 197 S.W. 2d 332, 333, 334, in quoting from Hines v. Arrant, Texas Civ. App., 225 S.W. 767, 768, writ refused, is peculiarly applicable here:

"If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will, ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances."

In this case the operator used far more care than is often used by travelers in crossing railroad tracks. He stopped completely before undertaking a crossing of the series of tracks. He looked both to the north and to the south. The train approaching from the north (his right) had not then come into view and there was no occasion for him to fear immediate danger from that direction. From his left he heard the whistling and the noise of a diesel switch engine which appeared to be switching back and forth. There was a standing freight train to his left on the third track, with the rear end of its lighted caboose only fifteen or twenty feet from the street on which he was traveling. He proceeded forward at a cautious rate of speed. The switching noises and whistling kept coming from his left. Those noises and the standing freight train to his left were a constant and continuing threat to his safety. His sense of hearing was keyed to the sounds of danger on his left and his sense of sight was directed at the standing freight because he was "watching it to keep it from backing over" him. When he reached a point where it appeared to him that the standing freight train was no longer a source of danger, he immediately turned his attention to possible dangers from his right.

Considering all of the foregoing facts, circumstances, and reasonable inferences which the jury was permitted to draw, we cannot say as a matter of law that the operator should have taken his second look to his right at an earlier time.

There is ample authority for the legal proposition that mere "distractions" which divert the attention of one crossing a railroad track from an approaching train by which he is injured will obviate a holding of failure to keep a proper lookout

as a matter of law. Kirksey v. Southern Traction Co., 110 Texas 190, 217 S.W. 139; Chicago, R.I. & G. Ry. Co. v. Laro, Texas Civ. App., 273 S.W. 684, writ dismissed; Beaumont, S.L. & W. Ry. Co. v. Richmond, Texas Civ. App., 78 S.W. 2d 232, 235, writ dismissed. In this case the operator's attention was not diverted from his right by a mere distraction but by conditions which to his mind posed the only threat of imminent danger to his safety. It should not be held that his decision to give his undivided attention to those conditions for so brief an interval was "so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person" would have done it.

In support of their contention, petitioner relies on Missouri-K-T Railroad Company of Texas v. McFerrin, 156 Texas 69, 291 S.W. 2d 931, in which we said that the deceased was guilty of contributory negligence as a matter of law if he failed to stop in the statutory area before going upon the railroad track.

The facts in the McFerrin case were far different from the facts in this case. In that case the motorist had no fair or reasonable opportunity to see the approaching train until he made a ninety-degree turn around an embankment and reached a point some fifty feet from the nearest rail of the railroad track. His only opportunity to look both ways came while he was passing through the stopping zone. There were no conditions of imminent danger, or even of distraction, to divert the entire attention of a prudent person to the left and thus to excuse his failure to look for possible danger to the right. Under those circumstances we held, of course, that a reasonably prudent person exercising ordinary care for his own safety should have looked both ways, and that had the deceased done so he would have seen the train approaching from his right. That holding can have no controlling effect under the facts of this case.

Lackey v. Gulf, C. & F.S. Ry. Co., Texas Civ. App., 225 S.W. 2d 630, no writ history, also relied on by petitioner, is not controlling for at least two reasons. In the first place, that case was decided before our decision in the McFerrin case and seems to rest on the theory that Sec. 86 (d) of Article 6701d imposes a duty on a motorist to stop if an approaching train *could* be seen whether or not it *should* be seen by one keeping a proper lookout for his own safety, a theory said by us in the McFerrin case to be an improper interpretation of the statute. Moreover, there were no distracting dangers in the Lackey case to excuse the failure of the truck driver to look to his right before driving

upon the track, and the approaching train was therefore "plainly visible" within the meaning of the statute in that it should have been seen by the driver in ample time to comply with the statute had he been keeping the kind of lookout for his own safety which a person of ordinary prudence would have kept. In that respect the facts in the Lackey case are very similar to the facts in the McFerrin case.

Petitioner also contends that it was entitled to an instructed verdict because the evidence is *insufficient* to show that the collision was proximately caused by the negligence of the operators of petitioner's train. Assuming that petitioner intends to urge that there is no evidence of probative force to support the jury findings that the excessive speed of the train and the failure of the train operatives to keep a proper lookout were proximate causes of the collision, we find that contention to be without merit and accordingly overrule it.

■ It will be noted that Special Issue No. 21, supra, inquired whether the operator stopped the truck within fifty but not less than fifteen feet from "the nearest rail of such railroad track." Other related issues were similarly phrased. Petitioner objected to that form of submission and by requested issues sought to have the inquiry confined to "the nearest rail of the track upon which the train was approaching." It was because of the failure of the trial court to so confine the inquiry that the Court of Civil Appeals reversed and remanded. We approve the action of the court in that respect.

The statute does not require a motorist to stop before undertaking to cross a track upon which no train is approaching. It does require him to stop before undertaking to cross a track on which a train is approaching, and he cannot discharge that duty by stopping at another and different track. Where a collision occurs at a grade crossing of a series of tracks, the inquiry should be confined to the nearest rail of the track on which the train was approaching.

The error in the issues submitted undoubtedly resulted in an improper verdict so as to require a reversal under Rules 434 and 503, Texas Rules of Civil Procedure. While deliberating on their verdict, the jury sent the following inquiry to the trial judge: "The jury wishes to know if in Special Issue No. 18 [a related issue to No. 21] the 15 ft. referred to, is in relation to main track or to first track driving west." The judge declined to elaborate. The jury then answered Special Issue No. 21 that

the truck driver did stop in the prescribed area and answered the related issues in harmony with that answer. According to the truck operator's own testimony he did not stop within the prescribed area of the track on which the train was approaching. It thus appears that the jury finding, if related to the track on which the train was approaching, has no support in the evidence and must, therefore, be related to the first track and is an immaterial finding.

Obviously, petitioner has not had a proper submission of its defenses under Article 6701d. Submission of petitioner's common law defense of failure of the truck operator to keep a proper lookout did not satisfy the requirement for submission of the statutory defenses.

The judgment of the Court of Civil Appeals is affirmed. Costs are assessed equally to the parties.

Associate Justice Culver dissenting.

Opinion delivered October 8, 1958.