Homer C. WILLIAMS, Appellant,

v.

TEXAS–NEW MEXICO RAILWAY COMPANY, Appellee.

No. 5377.

Court of Civil Appeals of Texas.

El Paso.

March 23, 1960.

Warren Burnett, Mike Berry, Odessa, for appellant.

Hill D. Hudson, Pecos, for appellee.

ABBOTT, Justice.

This is an appeal from a judgment that plaintiff take nothing on defendant's motion for an instructed verdict, which motion was made and sustained at the close of plaintiff's testimony. The defendant's motion for instructed verdict was based on four propositions:

1. Defendant's train was occupying the crossing at the time the plaintiff's car reached the said crossing and thus came within the "occupied crossing" rule;

2. Plaintiff's purported violation of Section 86(d), Article 6701d, Vernon's Annotated Civil Statutes of Texas;

3. Plaintiff's purported violation of Section 87, Article 6701d, Vernon's Annotated Civil Statutes of Texas; and

4. Plaintiff failed, as a matter of law, to keep a proper lookout.

Appellant complained of the granting of appellee's motion for instructed verdict, claiming that there was either no evidence or insufficient evidence to support the contentions contained in appellee's said motion, and that the evidence was such that reasonable minds might differ as to whether or not the appellant was guilty of contributory negligence.

Appellant (plaintiff below) was the operator of a motor vehicle on State Highway No. 1232 in Winkler County, Texas, at about 1:30 P.M., March 21, 1955, at a point about three miles east of the City of Wink, in the same county. At the above described point, the highway intersects with appellee's railroad tracks. Appellant's testimony, briefly, was that at the aforementioned time and place he was driving his car at a rate of speed estimated to be between 50 and 55 miles per hour; that the wind was blowing in gusts; it was a normal stretch of road and fairly narrow; a car was approaching from the opposite direction, and the wind was whipping this car about; that the terrain on each side of the highway was low, rolling sand dunes and mesquite brush; that his car windows were up because of the wind and sand; that his brakes were in good mechanical condition. Appellant further testified that, as he approached the crossing, he saw the highway warning signal of a railroad crossing, which is located approximately 400 feet from the crossing, and that he saw the regular railroad cross-arm signals ahead of him. Appellant further testified:

"Q. (By Senator Hudson) But, at any rate, as you were driving along there in an easterly direction, the car was approaching from the east, and you were watching it, and watching the road ahead of you, were you not? A. Yes, sir.

"Q. You had already passed this highway marker that told you that you were approaching a railroad crossing, hadn't you? A. Well, I wouldn't know how far from there.

"Q. If it's about 400 feet back there, you had seen it, you said while ago that you seen it, didn't you? A. Yes, sir.

"Q. You were within 160 feet before you ever looked south towards the railroad track. A. Yes, sir.

"Q. And when you did look, you saw the train, didn't you? A. Yes, sir.

"Q. And the train was going north, wasn't it? A. That's right.

"Q. And you knew the train was going to use that crossing, didn't you? A. Well, I imagine, yes, sir.

"Q. Well, you knew that it was headed in that direction and you were headed in that direction. A. Yes, sir.

"Q. And you knew it was certainly hazardous and dangerous for you to be there while that train was going across that crossing, didn't you? A. I didn't want to be there when it came across that crossing.

"Q. And you realized that there was danger when you first looked, didn't you? A. Yes, sir.

"Q. And you immediately started to apply your brakes? A. Yes, sir.

"Q. Now, you say that you just never did get her stopped until you hit the train, isn't that right? A. Yes, sir. That's right.

"Q. All right. Now, actually, did your speed increase or decrease after you put on your brakes? A. Decreased.

"Q. How fast would you say you went into the side of that train? A. Well, sir, the car would just jump, the brakes wouldn't hold and the sand was blowing and I was practically stopped when it went into the train and the sand would just make the car jump and I was practically stopped whenever I touched the train.

"Q. The sand wasn't on the pavement, was it? A. Well, it wasn't just piled up, no sir.

"Q. The pavement was dry, was it not? A. Yes, sir. But, there was sand blowing across the road.

"Q. As you came up there, you were practically stopped at the time you went into the side of that train, is that correct? A. Yes, sir."

■ While it is true that the Texas statutes do not impose an absolute duty upon the motoring public to stop at a railroad crossing, it is also true that when "an approaching train is plainly visible and is in hazardous proximity to such crossing", the driver of a motor vehicle is required to stop within 50 feet but not less than 15 feet from the nearest rail or said track. Art. 6701d, § 86(d), V.A.T.C.S.; Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex., 291 S.W.2d 931; Texas & New Orleans Railroad Co. v. Day, Tex., 316 S.W. 2d 402.

■ Appellant has presented insufficient evidence, in our opinion, to support the burden that he must carry. His own testimony is that he did not look to see if the train was plainly visible until he was 160 feet from the crossing, even though he had observed a warning sign 400 feet from the

track. It is clear to us that the trial court was correct in finding appellant guilty of contributory negligence as a matter of law.

Having found as above, we believe it unnecessary to answer the other points raised by appellant, as they would have no bearing on the outcome of this case.

We affirm the judgment of the trial court.