Johnny D. PERKINS, Sr., et ux., Appellants,

v.

Earl FISHER et ux., Appellees.

No. 7522.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 4, 1965.

**658**

Clayton, Kolander, Moser & Templeton, Amarillo, for appellants.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellees.

CHAPMAN, Justice.

This is an appeal from a judgment below against plaintiffs, Johnny D. Perkins, Sr., on behalf of his wife, Ruby Melton Perkins, against Flora Shaw Fisher, and husband, Earl Fisher, for personal injuries to Mrs. Perkins as a result of a rear-end collision in which an automobile driven by Mrs. Fisher "rear-ended" Mrs. Perkins' automobile parked in the center of N.E. 20th Street, a thirty-one foot asphalt paved street in the City of Amarillo.

Mrs. Perkins had driven her daughter to school and was on the way home when engine trouble developed leading to the eventual stop of the automobile in the position just stated.

The case was submitted to the jury by the trial court upon a number of questions concerning alleged improper conduct of the two named ladies in the operation of their automobiles. Some issues required only the answer of proximate cause and some were submitted on questions of negligence with the proximate cause component.

Mrs. Fisher was found to have committed acts which the jury said proximately caused the collision and resulting damages to the Perkins. The jury also found that Mrs. Perkins (1) failed to drive her automobile to her right and as close as possible to the curb of the roadway after the machine commenced to sputter, that such failure was negligence and a proximate cause of the collision; (2) that she failed to keep such a lookout for vehicles approaching from the rear as an ordinary prudent person would have kept under the same or similar circumstances and that such failure was a proximate cause of the collision; (3) that stopping her car on the roadway without first giving a signal of her intention to do so was a proximate cause of the accident; and that (4) she was negligent in stopping her automobile in the south traffic lane while proceeding in an easterly direction on N.E. 20th Street, which was a proximate cause of the accident.

A take-nothing judgment was rendered, from which appeal is perfected by Appellants Perkins upon eleven points of error.

The first point contends the trial court committed reversible error in failing to ask the jury if the plaintiff was negligent in failing to signal. This point goes directly to the question of whether a violation of Subsection (c) of Section 68 of Article 6701d, V.T.C.S., constitutes negligence as a matter of law or if under the facts of this particular case the common law standard

of the reasonably prudent man must be used in determining as a matter of fact whether the conduct of Mrs. Perkins was negligent.

Under the facts of that particular case it has been held in Booker v. Baker, Tex. Civ.App., 306 S.W.2d 767 (N.R.E.) that Subsection (a) of Section 68 of Article 6701d was not negligence per se. Subsection (b) of the same article has been held to constitute negligence per se in Wilson v. Manley, Tex.Civ.App., 347 S.W.2d 778 (N. R.E.). Subsection (c) of the same article and section and which is here under consideration has not yet been construed so far as we have been able to determine.

Subsection (a) of Section 143 of Article 6701d makes it a misdemeanor penal act " * * * for any person to violate any of the provisions of this Act unless such violation is by this Act or other law of this State declared to be a felony." Subsection (b) sets the penal punishment upon conviction " * * * for a violation of any of the provisions of this Act for which another penalty is not provided * * *."

Our Supreme Court in Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, has held that: "In this state we have followed the rule that the violation of a criminal statute is not merely evidence of negligence, but is negligence per se." Theoretically, the case just cited when considered in connection with Subsections (a) and (b) of Section 143 of Article 6701d making the violation of any of the provisions of Article 6701d (with the exceptions therein mentioned) [1] misdemeanors punishable by fine, it would appear a violation of any one of the many sections not included within the exceptions would be a violation of a criminal statute within the purview of Mundy v. Pirie-Slaughter Motor Co., supra, and therefore negligence per se.[2] If such were true there is authority to the effect that it would be error for the trial court to require the jury to determine if such act was negligence. Davis v. Estes, 44 S.W.2d 952 (Tex.Com.App. Section B).

The Supreme Court in Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931; and Texas & New Orleans Railroad Co. v. Day, 159 Tex. 101, 316 S.W.2d 402, in construing Section 86 (d) of Article 6701d has wisely rejected such theory.

In the McFerrin case the court said:

"We reject the theory and hold that whether a train was 'in hazardous proximity' to a crossing, so as to impose on an approaching motorist a duty to stop must be determined by the court from the evidence of the facts and circumstances existing at the time the motorist was compelled to make a decision, and should not be determined by or from the happening of subsequent events. We would be loath, indeed, to hold that the legislature, by the enactment of Article 6701d, Sec. 86(d), laid down a rule of evidence by which in this situation it has exacted of the motorist perfect foresight of all eventualities.

\* \* \* \* \* \*

"It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it."

---

1. Those exceptions are " * * * unless such violation is by this Act or other law of this State declared to be a felony."

2. It cannot be gainsaid that a misdemeanor statute is a criminal statute.

We believe it may be said from the cases just cited that when the statute imposes a conditional, not an absolute duty, then the test of the reasonably prudent man must be applied unless the facts themselves show the person was guilty of the violation as a matter of law. In Wilson v. Manley, supra, the Beaumont Court of Civil Appeals recognized this rule in holding that 68(b) of Article 6701d does not lend itself to amplification or construction; therefore, a violation thereof is negligence per se. Therefore, the trial court in this case in failing after proper objections to submit the question of negligence as a component of the issue of failing to signal has in effect held that Mrs. Perkins under the facts of this case was under the obligation as a matter of law to do so. This is true because Section 68(c) does not impose an absolute liability but is conditional upon whether the driver had an opportunity to give such signal. Therefore, we must look at the evidence to determine if the facts were such that the trial court could say as a matter of law she was required to signal.

Pressing the brakes to give a signal would have simply stopped the automobile faster and would have made more hazardous the situation of the automobile following her if Mrs. Perkins traveled only the five or six feet she testified she traveled after the motor stopped.

The evidence is not clear from the record as to whether the glass in the door next to the driver was up or down where Mrs. Perkins could have given a hand signal immediately upon recognizing that her motor was in danger of stopping, thus indicating she was stopping in the center of the street. With respect to the windows the testimony shows:

"Q. Did you have the windows rolled up?

A. The windows up?

Q. Yes.

A. On this side was up, and on this side, I'm not sure—I believe it was down."

It is impossible to tell from such testimony whether it was the window next to the driver that was down or the right window, which is material on the question of whether Mrs. Perkins had an opportunity to give such signal if she traveled only the five or six feet she testified to after the motor failure.

It is also not completely clear from the record as to how far Mrs. Perkins traveled from the time the motor sputtered until the automobile stopped in the center of the street. Counsel for appellees was questioning Mr Sowell, who lived near where the accident occurred and observed the collision. He was asking him how far Mrs Perkins traveled from the first click of the starter after the motor sputtered and died * * "Do you know how many feet you have got there from where you have got the 'x' where your car was at the time."

"A. Do I know how many?

Q. Just about.

A. I would have to approximate it.

Q. Approximate.

A. Roughly 50 to 75 feet."

No exhibit number is referred to in the record as to where the "x" was but we find an "x" on Defendants' Exhibit 1 marked on N.E. 20th Street and two symbols showing where the cars collided. Therefore, we believe we may assume from the record that the witness Sowell testified the Perkins' car traveled: "Roughly 50 to 75 feet" from the time he first heard the click of the starter after the motor failure before the collision. It is difficult to follow Mrs. Perkins' testimony but at one place in the record she testified the car sputtered, went five or six feet and stopped.

If she traveled 50 to 75 feet from the time the car sputtered and stopped and the glass to the door on the driver's side was down, she clearly had an opportunity

to give an appropriate hand signal that she was going to stop. If that testimony stood in the record clear and without contradiction, the court would have had more justification in finding as a matter of law that the facts required her to give the appropriate signal. As the record stands, however, we believe a submission of negligence was required.

We have written on this point only in an effort to state what we believe to be applicable rules under the facts of this case concerning Section 68(c) of Article 6701d and not because it controls the case.

■ In Special Issue No. 6 the trial court asked the jury if Mrs. Perkins failed to drive her automobile to her right on the occasion in question and as close as possible to the curb after the machine began to sputter, if such failure was negligence and if it was a proximate cause of the accident. The jury answered all questions in the affirmative. There is an abundance of evidence to support the answers. The jury had a right to decide under the facts of this case that she had plenty of time to do so if she traveled 50 to 75 feet. Additionally, she stated by her own testimony she could have done so.

Appellants present points on this series of issues to the effect that she was under no duty to drive toward and as close to the curb as possible; that 6(a) is a comment upon the weight of the evidence and that there is not any, or alternatively, insufficient evidence to support the issues.

■ We hold the issues were not improperly submitted as an inquiry of a common law duty and that there was an abundance of evidence to support the answers. It has been textually stated in 60 C.J.S. Motor Vehicles § 247, p. 603 that:

"A person operating a motor vehicle on a public street or highway is bound to anticipate the presence of other persons whose rights on the street or highway are equal to his own, * * *, and it is his duty to operate the motor vehicle with due and reasonable care and caution under the circumstances for the safety of others, and for his own safety as well. This duty exists at common law and is not dependent on any statutory requirements, and ordinarily is not affected by statutes regulating the operation of automobiles."

The Beaumont Court of Civil Appeals in Manning v. Block, Tex.Civ.App., 322 S.W.2d 651 at 655 (N.R.E.), has applied essentially the same duty of a driver in the following language:

"A person operating an automobile on the public roads must do so in a careful and prudent manner and with due regard for the rights of others on the road. This applies alike to cars preceding and cars following."

For other authorities see Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2a, Section 1195 at p. 31; San Antonio Transit Co. v. McCurry, Tex.Civ. App., 212 S.W.2d 645 (N.R.E.).

■ Though we believe appellants' contentions concerning Issue No. 6(a) and its corollaries are without merit, even if we should be in error in what we have said, the answers to 11(a) and 11(b) would preclude recovery for appellants. There the jury found Mrs. Perkins was negligent in stopping her car in the south traffic lane on N.E. 20th Street and that such negligence was a proximate cause of the accident.

The points urged against Issue 11(a) is that it was a comment upon the weight of the evidence, and that there is no evidence or insufficient evidence to support the issue.

Mrs. Perkins herself testified in effect that she could have driven over to the right

against the curb even after the machine started sputtering. The jury had a right to determine from the evidence if she used ordinary care in permitting the car to stop in the south traffic lane on the occasion in question in view of her obligation to anticipate the presence of others both to the front and rear of her, as discussed in the last preceding points. For the same reasons there stated there is an abundance of evidence to support a finding of negligence on Special Issue No. 11(a). The record does not show a point challenging the proximate cause finding by the jury upon the issue.

Appellants next contend that the trial court committed reversible error in the submission of Special Issue No. 7 and its proximate cause corollary inquiring if Mrs. Perkins failed to keep such a lookout for vehicles as an ordinary prudent person would have kept under the same or similar circumstances. It is contended that Mrs. Perkins was under no duty to keep a lookout to the rear; that there was no evidence or alternatively, insufficient evidence to support their submission; and that the answers were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The record shows the collision occurred at approximately 7:25 o'clock a.m. at a time parents were taking their children to school who attended Travis Junior High School in that area. Each of the ladies involved in the collision had just taken their children to school and were returning home. Mrs. Fisher testified in effect that she saw the Perkins' car as it pulled from the curb at Travis Junior High School, drove on down Martin Road and entered N.E. 20th Street going east; that as it entered N.E. 20th Street she was following about two car lengths behind and Mrs. Perkins was proceeding at about 20 miles per hour; that as she drove she was watching the Perkins' car and that she had no indication by signal or otherwise that Mrs. Perkins was slowing or stopping.

The oral evidence and exhibits show Mrs. Perkins was traveling in the center of a thirty-one foot street and that traffic could not go on straight, but had to turn either right or left a short distance ahead on Manhattan. As heretofore related, it also shows she knew she was having motor difficulties and that her car was slowing and might stop.

■ The knowledge that vehicular traffic had to turn either to the right or left a short distance ahead, coupled with the knowledge that she was slowing and might stop appears to us to require a proper lookout to the rear in order to show due regard for the rights of others who might be following. It is without contradiction that she knew she was having motor trouble and there is evidence from which the jury could have believed she traveled 75 feet or more after such knowledge. We therefore, hold she was under obligation to keep a lookout to the rear for vehicular traffic. Manning v. Block, supra; Jones v. Downey, Tex.Civ. App., 359 S.W.2d 116 (N.R.E.).

We have been unable to find any supreme judicial expression in our state on a situation closely enough analogous to our fact situation to cite it for our holding but believe the reasoning in the two cases cited is sound and that the points raised on the questions discussed are without merit. It would be only repetitious to relate evidence again in passing on the question of the great weight and preponderance of the evidence. We hold the evidence did not preponderate against the submission of the issues. In any event, the findings of the jury and the authorities cited on either one of two of the other three points discussed precludes recovery.

Finding no reversible error, the judgment is affirmed.