Thomas H. BLADES et al., Appellants,

v.

T. F. CHRISTY et al., Appellees.

No. 7878.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 6, 1969.

Rehearing Denied Feb. 3, 1969.

Kolander & Templeton, Amarillo, Robert L. Templeton, Amarillo, of counsel, for appellants.

Culton, Morgan, Britain & White, Amarillo, L. A. White, Amarillo, of counsel, for appellees.

DENTON, Chief Justice.

Our former opinion is withdrawn and the following opinion is submitted in lieu thereof.

This suit, by Thomas H. Blades and Pinkney Packing Company, seeks recovery against T. F. Christy and Fort Worth & Denver Railway Company for injuries and property damages arising out of an automobile-train collision in a crossing accident. From a jury verdict on special issues, both parties moved for a judgment. The trial court rendered judgment for the defendants below and the plaintiffs have perfected this appeal.

The collision occurred at the intersection of Browning Street and a Fort Worth & Denver track in the city of Amarillo, on August 3, 1966, shortly after 1:30 p.m. A plat in the record shows Browning Street runs north and south and intersects with a series of six railroad tracks, some owned by appellee Fort Worth & Denver and others by Santa Fe Railway Company, in an industrial section of Amarillo. Blades, a truck driver for Pinkney, had just loaded the large truck and trailer at the packing company plant which was located just north of the first track. He stopped at the company office to "log out" before proceeding to El Paso with his load of meat. At that point the truck was not less than 15 feet nor more than 50 feet from the first track. The truck and trailer were 52 feet in overall length and weighed 65,000 pounds loaded. The series of six tracks as they appeared from the north to the south are located as follows: The first track was the Santa Fe main line; the second is a Santa Fe switch track 8.6 feet to the south; 50.5 feet farther south is the Fort Worth & Denver main line; the fourth track was a Fort Worth & Denver spur track, designated "oil spur" 58 feet to the south of the third track; the fifth set of tracks was another Fort Worth & Denver spur track, called "wye" track, 37.8 feet south of the "oil spur"; and the sixth and last set of tracks was approximately 15 feet south of the "wye" track. The collision in question occurred on the wye track or the fifth set of tracks traveling from north to south, the route Blades traveled prior to the collision. There were no signal devices at any of the track crossings.

At the time of the collision, seven box cars were spotted on the "oil spur" by appellee with the closest car approximately 12 to 15 feet west of Browning Street. These box cars were to Blades' right as he traveled south. The switch engine, pulling thirteen freight cars, approaching from the west on the "wye" track, was to Blades' right. It is conceded that both the truck and train approached this intersection at

slow speeds. The train was moving at an estimated speed of approximately 5 m.p.h. and the truck's speed was estimated at 7–8 m.p.h. as it approached the "wye" track.

In response to the special issues submitted, the jury found: (1a) The box cars located on the "oil spur" track obscured the vision of motorists approaching from the north and the train approaching from the west on the "wye" track; (1b) that the leaving of the box cars at this location was negligence; and (1c) a proximate cause of the collision; (2) that the condition of the crossing in question was such as to make it extra-hazardous for traveling from the north when a train was approaching from the west on the "wye" track; (3a) the failure of the defendant to have a flagman at the crossing in question was negligence; (3b) such negligence was a proximate cause of the collision; (4a) the failure of the defendant to have an automatic signal device was not negligence; (5a) the defendant did not fail to sound its engine's horn or whistle; (6a) that the defendant did not fail to sound the engine bell; (7a) that Blades was in a position of peril immediately prior to the collision; (7b) that the engineer of the train discovered blades in such position; (7c) that the engineer realized that Blades could or would probably not be able to extricate himself from such position of peril; (7d) that the engineer did not discover Blades' position of peril in time to avoid the collision; (8a) that Blades did not fail to listen for any train as he approached; (9a) that Blades did not fail to keep a proper lookout; (10a) that the train was plainly visible before appellants' truck reached a point 15 feet from the nearest rail of the track; (10b) that the train was in a hazardous proximity to the crossing before the truck reached a point 15 feet from the nearest rail of the track; (10c) that the failure of Blades to stop the truck within 50 feet but not less than 15 feet from the nearest rail of the track was a proximate cause of the collision; and (11a) that Blades did not see the engine in time to avoid the accident by applying his brakes. Other issues exonerated Blades and Brice, a passenger in the truck, from other acts of negligence. Damages for personal injuries to Blades and property damages to the truck were awarded.

One of the appellees' defenses to the suit was based on the alleged violation by appellants' truck driver of the duty imposed by Section 86(d) of Article 6701d, Vernon's Ann.Civ.St., which reads:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:"

\* \* \* \* \* \*

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

This defense was submitted by Special Issues Number 10a, 10b and 10c. In response to these issues, the jury found the train was plainly visible before the truck reached a point 15 feet "from the nearest rail of the track", and that the train was in hazardous proximity to the crossing in question before the truck reached a point 15 feet from the nearest rail of the track; and that the truck driver's failure to stop within 50 feet but not less than 15 feet from the nearest rail was a proximate cause of the collision. The trial court correctly applied the "reasonably prudent person" test to the "plainly visible" special issue.

■ Appellants first urge error in the failure of the trial court to submit an issue of negligence for the failure of the truck driver to stop within the prescribed statutory area. It is conceded that the truck was not stopped after it left the appellant's premises until it was stopped on the "wye" track just prior to the collision. In construing Section 86(d) of Article 6701d, the Supreme Court has held that the duty

of a motorist to stop within 50 feet but not less than 15 feet of the nearest rail of a track is not absolute, but is conditioned on the circumstances. Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931. Texas & New Orleans Railroad Company v. Day, 159 Tex. 101, 316 S.W.2d 402. These circumstances or conditions are: (1) The train must be approaching the crossing; (2) the approaching train must be visible and (3) the train must be in hazardous proximity to the crossing. See also McBeth v. Texas & Pacific Railway Company (Tex.Civ. App.) 414 S.W.2d 45 (ref. n.r.e.). The McFerrin case clearly holds there is no statutory duty on a motorist approaching a railroad crossing to stop unless the train is approaching on that track, and is seen or should have been seen by a person under similar circumstances who is keeping a proper lookout for his own safety. In the instant case the jury found the driver kept a proper lookout, and that he did not see the switch engine in time to avoid the collision by applying his brakes. We think the evidence supports these findings.

 Fort Worth & Denver contends its pleadings and evidence established the truck driver did not stop at the crossing within the prescribed statutory area and that such act constituted negligence per se. This contention is well taken only if Blades was under a duty to stop. It is uncontradicted he did not in fact stop prior to reaching the "wye" track. Whether or not he was under a duty to stop was dependent upon the conditions that existed at the time of the accident. The Supreme Court, in *McFerrin*, has held:

"If there is a duty on the motorist to act it arises as he approaches and comes within the statutory stopping area. It is at that time that he must determine whether he is under a statutory duty to stop. As heretofore pointed out, the existence of the duty is not absolute but is conditioned on the existence at that time of a certain state of facts. It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless under all the attendant facts and circumstances it can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train, was hazardous."

This landmark case applies the common-law duty of a reasonably prudent person in applying the statutory requirement of Section 86(d) of Article 6107d. The failure to stop at the crossing becomes a violation of the statute and negligence per se only where the train was "plainly visible" and in "hazardous proximity" to a crossing, as a matter of law. In making this determination the common-law test for the reasonably prudent person is applied; that is, in order to hold that a train was "plainly visible" as a matter of law, a reasonably prudent person, similarly situated as a motorist and exercising ordinary care for his own safety, should have seen the train. In order to hold that a train was "in hazardous proximity" to a crossing, as a matter of law, under all the facts and circumstances that, by reason of speed and nearness of the train a reasonably prudent person should know an attempt to cross the track was hazardous. Appellees do not disagree with these general rules of law,

but argue the evidence supports the conclusion these conditions existed as a matter of law.

■ It is now established in instances where a party relies upon and proves the fact his adversary violated a statutory provision, the one charged with the violation may then go forward with evidence and show an excuse or justification for the violation. Hammer v. Dallas Transit Company (Tex.Sup.) 400 S.W.2d 885. Black v. Boyd (Tex.Civ.App.) 410 S.W.2d 6 (ref. n.r.e.). The one attempting to excuse or justify the violation has the burden of proving such excuse or justification. Jessee Produce Company v. Ewing (Tex.Civ. App.) 213 S.W.2d 750. If appellants have sustained this burden it is then the burden of the other party, appellee here, to obtain a finding that the violation was negligence under the common-law or reasonably prudent person standard. Hammer v. Dallas Transit Company, supra. Phoenix Refining Company v. Powell (Tex.Civ.App.) 251 S.W.2d 892 (ref. n.r.e.). Taber v. Smith (Tex.Civ.App.) 26 S.W.2d 722.

As stated, it was admitted that the truck driver did not stop within the statutory area of the "wye" track where the collision occurred. This statutory violation was pleaded and proved by the defendants below. The plaintiffs argue that this violation was excused or justified because of the conditions as they existed at the time immediately prior to the collision in question. They say the box cars placed on the "oil track" by appellees' employees were in such close proximity to Browning Street that they obscured Blades' vision to such an extent that he did not have time to stop within the prescribed area. The south rail of the "oil track" was 33 feet from the north track of the "wye track". Blades testified he did not see the engine until "I was beyond those box cars" and estimated he was "a little farther than 10 feet" from the "wye" track crossing before he saw the engine. He estimated the switch engine was approximately the same distance from the crossing when he first saw it. Whereas, the engineer testified the engine was some 60 feet west of the crossing when he saw the truck "come around the end of the cars". It is undisputed the engine's bell and whistle were operating as it approached the crossing. Blades testified he "hit" his brakes when he first saw the engine and stated "I was doing my best to stop it". He succeeded in stopping the truck on the "wye track" itself, and when he realized the train would strike the truck cab he "jumped it forward" in order that the train would strike the trailer, which it did.

The jury found the box cars which had been stopped on the oil track obscured the vision of motorists approaching from the north and of a train approaching from the west on the "wye track"; and the leaving of the box cars in that position was negligence and a proximate cause of the collision. The jury further found the crossing in question was extra-hazardous and that the railroad was negligent in its failure to have a flagman at the crossing and that such negligence was a proximate cause of the collision. The jury further found the truck driver did not fail to keep a proper lookout.

According to Blades' testimony, he was "a little farther than 10 feet" from the "wye track" crossing when he first saw the engine and that he saw the engine when he went around the box cars. The engineer seems to have corroborated this as he did not see the truck until it came around the "end of the cars". The "wye" track was not parallel with the oil track but curved away from the oil track in a southwesterly direction before crossing Browning Street. It was visible to Blades at some greater distance than if it had run parallel with the oil track, but this distance is not shown with any degree of accuracy. However, it is clear Blades was within the 50-foot area of the "wye track" when the train became visible and there is some evidence he was less than 15 feet from that track. An expert witness testified to the probable stop-

ping distance of the loaded truck when traveling at a speed of 8 m.p.h. He placed this distance, when considering reaction time, at approximately 35 feet which was the approximate distance between the "oil track" and the "wye track". The jury found the truck driver did not see the switch engine in time to avoid the accident by applying his brakes.

■ There was no duty on Blades to stop at the first four sets of tracks as there were no trains approaching on any of them. Texas & New Orleans Railroad Company v. Day, supra. The question is whether, under the facts and circumstances, Blades was under a duty, as a matter of law, to stop within the prescribed area before crossing the "wye track" crossing. Under the facts and circumstances here we cannot say the approaching switch engine was plainly visible and in a hazardous proximity to the crossing as a matter of law. We think appellants sustained their burden by raising the fact issue that it was justified or excused in violating Section 86(d) by not stopping within the prescribed area. Appellants' evidence raised the issue of whether their driver could have stopped his truck within the prescribed statutory area by the exercise of ordinary care after the engine became plainly visible and in a hazardous proximity to the crossing. This placed the burden upon appellees to obtain a finding that the violation was negligence under the common-law standard. Hammer v. Dallas Transit Company, supra. Cunningham v. Suggs (Tex.Civ.App.) 340 S.W.2d 369 (ref. n.r.e.). Phoenix Refining Company v. Powell, supra.

■ Appellants' pleadings, without exceptions being leveled against them, adequately pleaded the obstruction to motorists caused by the box cars on an adjacent track. The detailed pleadings gave adequate notice of excuse or justification of the statutory violation. Contrary to appel-

lees' contention, appellants properly and timely objected to the failure of the trial court to submit the question of negligence of the failure of appellants' driver to stop at the crossing within the prescribed area. Appellants' objections to the court's charge in submitting Special Issues 10a, 10b and 10c were sufficient under Rule 374, Texas Rules of Civil Procedure, to complain of the court's failure to submit the issues of negligence with such special issues. Appellees failed to sustain their burden to obtain a finding that the alleged violation was negligence, under the common-law standard. In view of appellants' objections to the court's charge because of the failure to submit the question of negligence, there can be no deemed or presumed finding in support of the trial court's judgment adverse to the appellees. Petroleum Anchor Equipment, Inc. v. Tyra (Tex.Sup.) 419 S.W.2d 829. Rule 279, T.R.C.P.

■ Special Issue No. 10a and its related parts inquired whether Blades stopped the truck within the statutory area of not less than 15 feet nor more than 50 feet from the "nearest rail of the track". Appellants' objection to the form of these issues was general and indefinite, however the issue should have been framed so as to confine the inquiry to the "nearest rail of the track on which the train was approaching" or in some manner to more clearly identify the track upon which the train was approaching. Texas & New Orleans Railroad Company v. Day, supra, approved this suggested form of submission in a case in which a series of tracks was also involved.

We have considered the other points of error brought forward by appellants, but in view of the disposition of this case it is not deemed necessary to discuss them.

The judgment of the trial court is reversed and judgment is here rendered for appellants.